IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TURNER CONSTRUCTION CO.,

    Plaintiff,

v.                                                     Civil Action No. 1:15CV83
                                                                           (STAMP)

AMERICAN SAFETY CASUALTY
INSURANCE COMPANY,

    Defendant,

and

UNITED STATES f/u/b/o
DESIGNER'S SPECIALTY CABINET CO.,
d/b/a DESIGNER'S SPECIALTY MILLWORK,

    Intervenor-Plaintiff,

v.

TURNER CONSTRUCTION CO.,
TRAVELERS SURETY & CASUALTY
CO. OF AMERICA,
FEDERAL INSURANCE CO.,
THE CONTINENTAL INSURANCE CO.,
FIDELITY & DEPOSIT CO. OF MD,
ZURICH NORTH AMERICAN INSURANCE CO.,
LIBERTY MUTUAL INSURANCE CO. and
ZURICH AMERICAN INSURANCE CO.,

    Intervenor-Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING INTERVENOR-PLAINTIFF'S MOTION FOR
LEAVE TO FILE AMENDED INTERVENOR COMPLAINT**

    The intervenor-plaintiff filed a motion for leave to file an amended intervenor complaint, seeking to allege additional claims against the plaintiff-intervenor-defendant. ECF No. 99. The plaintiff-intervenor-defendant filed a response in opposition,

arguing that the amendment would be futile because the intervenor-plaintiff's additional claims are frivolous. For the following reasons, the intervenor-plaintiff's motion is granted.

## I. Background

The plaintiff, Turner Construction Company ("Turner"), entered into a contract with the Federal Bureau of Investigation ("FBI") to build facilities in Clarksburg, West Virginia. After initially engaging Institutional Products, Inc. ("Institutional Products"), in a subcontract to provide millwork, Turner entered into a subcontract with Designer's Specialty Cabinet Company doing business as Designer's Specialty Millwork ("DSM") to replace Institutional Products. The defendant, American Safety Casualty Insurance Company ("ASCIC"), issued a performance bond guaranteeing DSM's performance of its subcontract with Turner. The performance bond incorporated by reference the subcontract, including a provision indemnifying Turner against any increased costs due to a slow-down or breach of the subcontract. The subcontract also allowed Turner to inspect DSM's work and order that defective work be redone. If DSM defaulted, Turner was permitted to complete the work itself or engage another subcontractor to use DSM's on-site equipment and supplies after providing DSM with three days notice.

Turner alleges that DSM defaulted on the subcontract by improperly staffing the project, by providing late supplies deliveries, and by ignoring directions from Turner and the FBI.

2

Turner sent a default notice to DSM and ASCIC. ASCIC responded, stating that it did not believe DSM was in default. Turner then notified ASCIC of its intent to exercise the alternative completion clause. Over three days later, Turner engaged another subcontractor to complete the project.

Turner filed this civil action against ASCIC to collect under the indemnification clause of the subcontract as incorporated into the performance bond. DSM has been permitted to join the action as an intervenor-plaintiff, with Turner and Travelers Surety & Casualty Company of America, Federal Insurance Company, the Continental Insurance Company, Fidelity & Deposit Company of Maryland, Zurich North American Insurance Company, Liberty Mutual Insurance Company, and Zurich American Insurance Company (collectively "the Miller Act Sureties") named as intervenor-defendants. In its intervenor complaint, DSM alleges that it is entitled to payment of the Miller Act bonds by the Miller Act Sureties and to damages for breach of the subcontract by Turner. Turner then filed a counterclaim against DSM for breach of contract.

DSM has now filed a motion for leave to file an amended intervenor complaint. DSM seeks to add claims against Turner for fraudulent inducement, common law fraud, and cardinal change to the subcontract. Turner filed a response in opposition to DSM's motion for leave to file the amended intervenor complaint. Turner argues

3

that the motion should be denied because the amendments would be futile. Specifically, Turner argues that the additional claims DSM seeks to allege are frivolous and fail to state claims upon which relief can be granted.

## II. Applicable Law

Federal Rule of Civil Procedure 15(a)(2) permits a party to amend its pleading "only with the opposing party's written consent or the court's leave[,] . . . [and] [t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). When a party files a motion for leave to amend its pleading, the court should deny the party's motion "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986). The court should deny leave to amend on the ground of futility only "when the proposed amendment is clearly insufficient or frivolous on its face." Id. at 510.

## III. Discussion

Turner argues that this Court should deny DSM's motion for leave to amend the intervenor complaint because the amendments would be futile. Specifically, Turner argues that DSM's proposed allegations of fraudulent inducement, common law fraud, and cardinal change to the subcontract would be futile because they are clearly insufficient and are frivolous. Turner also requests a

hearing on this motion. However, this Court finds that the parties' memoranda sufficiently address the issues involved, and thus Turner's request for a hearing is denied.

First, DSM's proposed allegations of fraudulent inducement are not futile. Assuming without deciding that West Virginia law applies to DSM's non-Miller Act claims against Turner, a plaintiff may recover in tort for fraudulent inducement where the defendant made a false promise "without intention of performance by him, for the fraudulent purpose of putting him in an advantageous position at the expense of the plaintiff, and [the plaintiff] acted upon . . . [the promise] to his detriment." Traders Bank v. Dils, 704 S.E.2d 691, 696, 695 (W. Va. 2010).

DSM seeks to allege that Turner made false affirmative representations to DSM before it entered into the subcontract regarding completion dates, payments for engineering costs and offsite materials, DSM's liability for liquidated damages, and that certain onsite storage would be provided to DSM. DSM also alleges that Turner purposefully failed to disclose various problems with the construction project that Turner knew would negatively affect DSM's ability to perform at the subcontract price. DSM claims that it relied on these representations, leading to substantial delays and increased costs to DSM, which Turner foresaw. These allegations are sufficient to state a claim for fraudulent inducement.

However, Turner argues that DSM's proposed fraudulent inducement claim is frivolous for two reasons; because the subcontract is fully integrated such that parol evidence would be excluded, and because DSM's allegations are factually false. However, under West Virginia law, parol evidence will not be excluded as evidence to show that Turner made false promises to DSM. See Traders Bank, 704 S.E.2d 691 at 695-96. Further, at this time DSM need not prove its proposed claim to obtain leave to amend its pleading, but only that its amendments are not brought in bad faith, will not prejudice another party, and will not be futile. Johnson, 785 F.2d at 509. Thus, Turner's factual challenges to the proposed claim are irrelevant at this time.

Second, DSM's proposed common law fraud claim will not be futile. Under West Virginia law, "[t]he essential elements . . . [of] fraud are: (1) 'that the act claimed to be fraudulent was the act of the defendant or induced by him;' (2) 'that it was material and false;' (3) 'that [the] plaintiff relied upon it and was justified under the circumstances in relying upon it;' and (4) 'that he was damaged because he relied upon it.'" Bowens v. Allied Warehousing Servs., Inc., 729 S.E.2d 845, 852 (W. Va. 2012) (internal quotation marks omitted). "In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

DSM seeks to allege that Turner misrepresented to DSM its attempts to obtain payment from the FBI for DSM's invoices, and that Turner intentionally delayed properly filing DSM's invoices knowing that the FBI would reject them as untimely. Further, DSM seeks to allege that Turner failed to properly file several claims for payment but told DSM that it had and was actively seeking payment. DSM also seeks to allege that Turner falsely told DSM to use the Eichleay formula to calculate damages for its delay claims, while Turner knew the FBI would reject those claims based on the use of the Eichleay formula. Thus, DSM's proposed allegations specify particular representations by Turner to DSM that were materially false, and that DSM relied on these representation to its detriment.

Turner disputes the facts as alleged by DSM, and argues that any claim for losses caused by delay should be brought as a breach of contract claim rather than one for fraud. Again, Turner's factual disputes with DSM's proposed allegations are irrelevant at this time. Further, regardless of whether DSM may seek damages relating to unpaid delay claims in a breach of contract claim, DSM's proposed allegations facially state a claim for fraud, and this Court finds no reason to preclude the fraud claim at this time.

Third, DSM's proposed allegations of a cardinal change claim would not be futile. Turner argues that under federal law, the

cardinal change doctrine applies only to government contracts where the government affects a cardinal change in the terms of the contract, and that the doctrine does not apply to subcontracts to the prime government contract. DSM argues that courts have applied the cardinal change doctrine to such subcontracts. Specifically, DSM argues that the United States District Court for the District of Maryland applied the cardinal change doctrine to a subcontract in <u>Westinghouse Electric Corporation v. The Garrett Corporation</u>, 437 F. Supp. 1301 (D. Md. 1977).

However, there is no clear authority for applying the cardinal change doctrine to subcontracts. <u>See</u> <u>Centex Constr. v. Acstar Ins. Co.</u>, 448 F. Supp. 2d 679, 715 n.8, 715-16 (E.D. Va. 2006) (finding no authority for applying the cardinal change doctrine to subcontracts). <u>But see</u> <u>United States ex rel. Ragghianti Founds. III, LLC v. Peter R. Brown Constr., Inc.</u>, 49 F. Supp. 3d 1031, 1054-57 (M.D. Fla. 2014) (applying both federal and state law in determining whether there was a cardinal change to a subcontract). Contrary to DSM's assertions, the court in <u>Westinghouse</u> applied the federal cardinal change doctrine only because the subcontract contained a changes clause "derive[d] from the Armed Services Procurement Regulations." <u>Westinghouse</u>, 437 F. Supp. at 1332-34. Similarly, it is unclear whether federal law or state law applies to subcontracts to a prime government contract regarding application of the cardinal change doctrine. <u>See</u> <u>Ragghianti</u>, 49 F.

8

Supp. 3d at 1054-57 (applying federal and state law to subcontractor's cardinal change claim); Centex, 488 F. Supp. 2d at 715-16 (noting that Virginia state law did not recognize a cause of action for cardinal change and that the subcontractor failed to prove a cardinal change claim under federal law); Westinghouse, 437 F. Supp. at 1332-34 (applying the federal cardinal change doctrine to a subcontract because "[t]he Changes Clause in th[e] [sub]contract derive[d] from the Armed Services Procurement Regulations"). Regardless, this Court need not conduct a choice of law analysis at this time, because this Court finds that West Virginia law also recognizes a cause of action under the cardinal change doctrine. See Cochran v. Craig, 106 S.E. 633, 641 (W. Va. 1921) (concluding that a plaintiff may recover damages based on a "material alteration made in their plans by the defendants, necessitating departure from the contract by the plaintiff, . . . at great additional expense to him").

Under either federal or West Virginia law, DSM's proposed allegations state a claim under the cardinal change doctrine. DSM seeks to allege that Turner imposed additional requirements, added scope, and new conditions upon DSM that were materially different that those bargained for in the subcontract. Specifically, DSM seeks to allege that Turner failed to disclose various problems with the construction project that inhibited DSM's ability to perform at the subcontract price, that Turner and its other

9

subcontractors caused major delays and interference with DSM's work by making many areas of the building unavailable to DSM, and that Turner denied DSM's demands for increased payments for changes in its work. While Turner argues that these changes and delays were specifically contemplated by the subcontract, that is a factual question to be determined at a later date.

## IV. Conclusion

This Court finds that Designer's Specialty Millwork's proposed amended intervenor complaint will not prejudice the parties, is not being brought in bad faith, and will not be futile. Accordingly, Designer's Specialty Millwork's motion for leave to file its amended intervenor complaint (ECF No. 99) is GRANTED. Designer's Specialty Millwork is DIRECTED to file an executed copy of its amended intervenor complaint and to serve all parties with its amended intervenor complaint. Further, the intervenor-defendants are DIRECTED to file any answer or responsive pleading to the amended complaint **within fourteen days of being served with the amended intervenor complaint**. See Fed. R. Civ. P. 15(a)(3).

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    June 16, 2016

                                    /s/ Frederick P. Stamp, Jr.
                                    FREDERICK P. STAMP, JR.
                                    UNITED STATES DISTRICT JUDGE