IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TURNER CONSTRUCTION CO.,

        Plaintiff,

v.                                Civil Action No. 1:15CV83
                                                    (STAMP)
TIG INSURANCE COMPANY,
successor by merger to
AMERICAN SAFETY CASUALTY
INSURANCE COMPANY,

        Defendant,

and

UNITED STATES f/u/b/o
DESIGNER'S SPECIALTY CABINET CO.,
d/b/a DESIGNER'S SPECIALTY MILLWORK,

        Intervenor-Plaintiff,

v.

TURNER CONSTRUCTION CO.,
TRAVELERS SURETY & CASUALTY
CO. OF AMERICA,
FEDERAL INSURANCE CO.,
THE CONTINENTAL INSURANCE CO.,
FIDELITY & DEPOSIT CO. OF MD,
ZURICH NORTH AMERICAN INSURANCE CO.,
LIBERTY MUTUAL INSURANCE CO. and
ZURICH AMERICAN INSURANCE CO.,

        Intervenor-Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION TO WITHDRAW JURY DEMAND
## AND TO STRIKE JURY DEMAND FROM INTERVENOR-COMPLAINT

    The plaintiff has filed a motion to withdraw its jury demand and to strike the jury demand contained in the amended intervenor-complaint. The defendant and the intervenor-plaintiff oppose the

plaintiff's request to withdraw its jury demand, and the intervenor-plaintiff opposes the plaintiff's request to strike the intervenor-plaintiff's jury demand. This memorandum opinion and order sets forth in detail this Court's prior oral ruling made at the telephonic status and scheduling conference held on October 31, 2016. For the following reasons, the plaintiff's motion is denied.

I. Background

The plaintiff, Turner Construction Co. ("Turner"), entered into a contract with the Federal Bureau of Investigation ("FBI") to build facilities in Clarksburg, West Virginia. After initially engaging Institutional Products, Inc. in a subcontract to provide millwork, Turner entered into a subcontract with Designer's Specialty Cabinet Company doing business as Designer's Specialty Millwork ("DSM") to replace Institutional Products, Inc. The original defendant, American Safety Casualty Insurance Company ("ASCIC"), issued a performance bond guaranteeing DSM's performance of the subcontract. The performance bond incorporated by reference the subcontract's terms, including a provision indemnifying Turner against any increased costs due to a slow-down or breach of the subcontract. Turner alleges that DSM defaulted on the subcontract by improperly staffing the project, by providing late supplies deliveries, and by ignoring directions from Turner and the FBI. Turner then exercised the subcontract's alternative completion clause and engaged another subcontractor to complete the project.

Turner filed this civil action against ASCIC to collect under the indemnification clause of the subcontract as incorporated into the performance bond. Turner's complaint "DEMANDS A JURY ON ALL ISSUES SO TRIABLE." ECF No. 1 at 10. TIG Insurance Company ("TIG") has since replaced ASCIC as the defendant as ASCIC's successor by merger. DSM has been permitted to join the action as an intervenor-plaintiff, with Turner and the Miller Act sureties named as intervenor-defendants.[1]

In its amended intervenor-complaint, DSM alleges that it is entitled to payment of the Miller Act bonds by the sureties and asserts claims against Turner for breach of contract, fraudulent inducement, common law fraud, and cardinal change. Turner filed a counterclaim against DSM for breach of contract. DSM's original intervenor-complaint did not include a jury demand, but its amended intervenor-complaint does include a jury demand.

## II.  Applicable Law

Federal Rule of Civil Procedure 38(b) provides that a party may demand a jury trial "[o]n any issue triable of right by a jury." Fed. R. Civ. P. 38(b). A party may withdraw its jury demand "only if the parties consent." Fed. R. Civ. P. 38(d). Under Rule 39(a), a court may strike a party's jury demand if the

---

[1] The Miller Act sureties include Travelers Surety & Casualty Co. of America, Federal Insurance Co., The Continental Insurance Co., Fidelity & Deposit Co. of Maryland, Zurich North American Insurance Co., Liberty Mutual Insurance Co., and Zurich American Insurance Co.

court "finds that . . . there is no federal right to a jury trial" on the issues for which a jury trial was demanded. Fed. R. Civ. P. 39(a)(2).

III. Discussion

A. Turner's Jury Demand

Turner's complaint "DEMANDS A JURY ON ALL ISSUES SO TRIABLE." ECF No. 1 at 10. ASCIC's original answer and TIG's amended answer do not include a jury demand. DSM's original intervenor-complaint did not include a jury demand, but its amended intervenor-complaint does include a jury demand. Neither TIG nor DSM consent to Turner's motion to withdraw its jury demand. Turner argues that TIG and DSM's consent is not required to withdraw its jury demand because neither party relied on Turner's jury demand.

First, Turner argues that ASCIC and TIG waived their rights to a jury trial by not relying on Turner's jury demand because "there is no evidence that ASCIC, the party against whom the jury demand was made, had any intention of relying on Turner's jury demand or that it failed to make its own jury demand in reliance on Turner's jury demand." ECF No. 109 at 4. However, the right to a jury trial is a fundamental right; thus, waivers of that right are heavily scrutinized and "courts indulge every reasonable presumption against" such waivers. Aetna Ins. Co. v. Kennedy ex rel Bogash, 301 U.S. 389, 393 (1937). The United States Court of Appeals for the Ninth Circuit has held that this presumption may be

4

overcome if the party asserting waiver shows that the non-consenting party affirmatively or through its conduct in the litigation did not rely on the jury demand. Reid Bros. Logging Co. v. Ketchikan Pulp Co., 699 F.2d 1292, 1304-05 (9th Cir. 1983). However, the United States Court of Appeals for the Fourth Circuit has not adopted the Ninth Circuit's holding. Even if the Ninth Circuit's holding applies, Turner simply asserts that ASCIC and TIG have not relied on its jury demand, and Turner presents no evidence or argument to overcome the presumption of non-waiver. Accordingly, this Court finds that Turner may not withdraw its jury demand.

Second, Turner argues that DSM's consent is irrelevant because DSM contractually waived its right to a jury trial. While it is true that consent is not required from a party that does not have a right to a jury trial, Kramer v. Banc of Am. Secs., LLC, 355 F.3d 961, 968 (7th Cir. 2004), as discussed below, this Court finds that DSM did not waive its right to a jury trial in this civil action. Nevertheless, regardless of whether DSM waived its right to a jury trial, TIG has not waived its right to jury trial and its consent is needed. Thus, Turner may not withdraw its jury demand.

B. DSM's Jury Demand

Turner argues that DSM's jury demand should be stricken because DSM contractually waived its right to a jury trial and, alternatively, because its jury demand is untimely. For the

5

following reasons, this Court finds that DSM's claims are embraced by Turner's jury demand, that DSM did not contractually waive its right to a jury trial, and that DSM's jury demand should not be stricken.

1. Scope of Turner's Jury Demand

As a preliminary matter, DSM's claims against Turner are embraced by Turner's jury demand and DSM's demand is superfluous, regardless of whether DSM waived its right to a jury trial.

Rule 38(d)'s consent-to-withdrawal requirement means that "once one party files . . . a [jury] demand other parties are entitled to rely on that demand for the issues it covers, and need not file their own demands." Fuller v. City of Oakland, 47 F.3d 1522, 1531 (9th Cir. 1995). A general jury demand "extends even to issues raised by the opposing party." Millner v. Norfolk & W. R. Co., 643 F.2d 1005, 1010 (4th Cir. 1981). Similarly, a "demand may be relied on by parties other than those directly adverse to the demanding party; if issues embraced by the pleadings containing the demand occur between third parties on a cross-claim, the jury right inheres in those issues as well." In re N-500L Cases, 691 F.2d 15, 22 (1st Cir. 1982). In determining the scope of a demand, as used in Rule 38, the term "issue" is concerned with issues of fact, not the addition of new legal theories or new parties. Id. at 22-23. "One issue is the same as another when it is based on the same conduct or concerns the same general area of dispute." Id.; see

also <u>Lanza v. Drexel</u>, 479 F.2d 1277, 1310 (2d Cir. 1973). Thus, the inquiry is whether the "issues" raised in each pleading "turn on the same matrix of facts." <u>Las Vegas Sun, Inc. v. Summa Corp.</u>, 610 F.2d 614, 620 (9th Cir. 1979).

Turner made a general jury demand in its complaint, embracing all issues raised in the complaint. This demand necessarily "extends even to issues raised by the opposing party"; originally ASCIC, now TIG. <u>Millner</u>, 643 F.2d at 1010. The complaint alleges that DSM breached the subcontract by improperly staffing the project, by providing late supplies deliveries, and by ignoring directions from Turner and the FBI. Thus, the general area of dispute raised by Turner's complaint is the parties' performance of the subcontract and any defenses to the subcontract.

Because ASCIC and now TIG are DSM's sureties, they are entitled to raise any defenses that DSM could raise. To that end, ASCIC's original answer and TIG's amended answer each incorporate by reference all DSM's affirmative defenses to Turner's counterclaim against DSM. ECF Nos. 98 at 7, 234 at 8. Those affirmative defenses include: (1) that DSM's performance was excused due to Turner's material breaches of the subcontract, ECF No. 91 at 3-5, 8; (2) that Turner fraudulently misled DSM and its surety in the course of performance, <u>id.</u> at 6-7; (3) that Turner affected a cardinal change to the subcontract, <u>id.</u> at 7; and (4) that Turner fraudulently induced DSM to enter into the subcontract.

7

Id. at 8. Thus, ASCIC and TIG respectively raised these affirmative defenses in their original and amended answers to the complaint, and Turner's jury demand necessarily embraces those affirmative defenses.

In its amended intervenor-complaint, DSM alleges that Turner breached the subcontract, that DSM is entitled to payment of the Miller Act bonds by the sureties because of Turner's breach, that Turner fraudulently induced DSM to enter into the subcontract, that Turner committed common law fraud in the course of performance, and that Turner affected a cardinal change to the subcontract. Each of these claims is co-extensive with ASCIC and TIG's affirmative defenses. Because DSM's claims are identical to TIG's affirmative defenses, DSM's claims do not raise new issues. Thus, Turner's jury demand embraces DSM's claims regardless of whether DSM has a right to a jury trial on those claims.

2. Contractual Waiver of Right to Jury Trial

Turner argues that Article XXXIII of the subcontract between it and DSM constitutes a waiver of DSM's right to a jury trial. "The Seventh Amendment right is of course a fundamental one, but it is one that can be knowingly and intentionally waived by contract." Leasing Serv. Corp. v. Crane, 804 F.2d 828, 832-33 (4th Cir. 1986). "[T]he party seeking enforcement of the waiver must prove that consent was both voluntary and informed." Id. at 833. "There is a presumption against denying a jury trial based on waiver, and

8

waivers must be strictly construed." Med. Air Tech. Corp. v. Marwan Inv., Inc., 303 F.3d 11, 18 (3d Cir. 2002) (citing Aetna Ins. Co., 301 U.S. at 393). In determining whether to enforce a contractual jury waiver, courts must first determine whether the plain language of the waiver "unambiguously covers the claims asserted." Id.; see also Topline Solutions, Inc. v. Sandler Sys., Inc., 131 F. Supp. 3d 435, 439 (D. Md. 2015).

Article XXXIII of the subcontract, with the header "Dispute Resolution," provides in full:

> Article XXXIII. The Subcontractor acknowledges that the General Contract commits certain decisions and factual and legal determinations to the representative of the Owner designated the Contracting Officer including, but not limited to, decisions and/or determinations as to the quality of the work, the existence of differing site conditions, suspensions, or changes, and the appropriate compensation for any of the foregoing, or for and [sic] delay, impact or disruptions. The Subcontractor agrees that any decisions and/or determinations of the Contracting Officer shall be as binding upon the Subcontractor as upon Contractor. The Subcontractor further agrees that any factual and legal determinations by any Court, Board of Contract Appeals or other administrative tribunal that are binding upon Contractor shall also be binding upon the Subcontractor.
>
> The Subcontractor shall not be entitled to assert any claim that is inconsistent with any such binding decision or factual or legal determination and expressly consents to the dismissal of any lawsuit or proceeding asserting such claim, provided however, if such a suit or proceeding has been commenced and Contractor has commenced an appeal or other proceeding to challenge any such binding decision or determination, the Subcontractor's lawsuit may be stayed during the pendency, and until the completion of all appeals and proceedings challenging such decisions or determinations, as necessary to preserve the Subcontractor's rights, if

any, against the running of any applicable limitations period.

It is expressly understood that any right of the Subcontractor to receive any payment under the Subcontract shall be co-extensive with Contractor's right to receive reimbursement for such payment under the Primary Subcontract, as determined in accordance with decision and determinations that are binding upon Contractor and Subcontractor expressly waives any claim to any payment in excess thereof or on a basis for payment different from the foregoing, including but not limited to any contrary rights arising under 40 USC 27a and/or 270b.

The parties recognize that problems and disputes between them may occur and that it is preferable for them to reach an amiable resolution of same without the need to resort to formal dispute resolution procedures. In that regard, they each pledge to participate in good faith in voluntary and non-binding Alternative Dispute Resolution (ADR) procedures. However, in the event that such disputes are not resolved by mediation or other ADR procedure as Contractor and the Subcontractor may agree then such disputes shall be resolved at the Contractor's sole option either in the manner and forum pursuant to which disputes between the Owner and Contractor are to be resolved under the terms of the General Contract, or according to law. Furthermore, the Subcontractor agrees that Contractor shall have the exclusive right to join the Subcontractor as a party in any dispute resolution procedure (including without limitation ADR procedures, binding arbitration or other judicial or non-judicial proceeding) between the Owner and the Contractor, together with such other Subcontractors or parties as may be appropriate, where in the judgment of Contractor the issues in dispute are related to the work or performance of the Subcontractor. Furthermore, <u>the Subcontractor expressly agrees to waive its right to trial by jury in case Contractor elects to resolve the dispute in litigation</u>.

ECF No. 109-2 at 11-12 (emphasis added).

This Court finds the jury waiver's scope to be ambiguous. It is unclear whether the waiver applies to disputes between Turner

and the FBI implicating DSM's work, to disputes between Turner and DSM, or to both.  The final paragraph of Article XXXIII deals both with disputes between DSM and Turner and with disputes between Turner and the FBI relating to DSM's work.  The jury waiver clause uses "the dispute" as an unqualified term, making it unclear to which type of dispute it refers.  Further, the preceding paragraphs of Article XXXIII all deal with how the results of disputes between Turner and the FBI affect DSM.  The term "the dispute" may reasonably be interpreted to apply to either disputes between DSM and Turner, disputes between Turner and the FBI involving DSM's work, or both.  See Spartan Iron & Metal Corp. v. Liberty Ins. Corp., 6 F. App'x 176, 178 (4th Cir. 2001) ("A term is ambiguous only when it may fairly and reasonably be understood in more ways than one.").  Thus, this Court finds that the plain language of the waiver does not unambiguously apply to disputes between DSM and Turner.  Strictly construing that provision, this Court finds that DSM has not waived its right to a jury trial in this civil action.

   3. Timeliness

Turner also argues that DSM waived its right to a jury trial by failing to make a timely jury demand.  A jury demand is timely if it has been served on all other parties "no later than 14 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b)(1).  Where an amended pleading raises new issues not contained in the original pleadings, the amended pleading is the

11

"last pleading" for the purpose of the new issues. Jones v. Boyd, 161 F.R.D. 48, 49 (E.D. Va. 1995); Brown v. Cox, No. 2:11CV184, 2012 WL 243233, *5 (E.D. Va. Jan. 24, 2012) (citing 9 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice and Procedure § 2320 (3d ed. 1998)).

Although this Court finds that DSM's claims are embraced by Turner's jury demand, if they are not, then they would constitute new issues for which DSM was permitted to demand a jury trial. Thus, DSM's jury demand would be timely as to the new claims raised in the amended intervenor-complaint because the amended-intervenor complaint would be the "last pleading" as to those issues.

## V. Conclusion

For the foregoing reasons, Turner Construction Co.'s motion to withdraw its jury demand and to strike DSM's jury demand (ECF No. 109) is DENIED. Turner's jury demand, contained in the complaint, embraces all issues raised in this civil action.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    November 4, 2016

> /s/ Frederick P. Stamp, Jr.
> FREDERICK P. STAMP, JR.
> UNITED STATES DISTRICT JUDGE