IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TURNER CONSTRUCTION CO.,

    Plaintiff,

v.                                                 Civil Action No. 1:15CV83
                                                             (STAMP)
TIG INSURANCE COMPANY,
successor by merger to
AMERICAN SAFETY CASUALTY
INSURANCE COMPANY,

    Defendant,

and

UNITED STATES f/u/b/o
DESIGNER'S SPECIALTY CABINET CO.,
d/b/a DESIGNER'S SPECIALTY MILLWORK,

    Intervenor-Plaintiff,

v.

TURNER CONSTRUCTION CO.,
TRAVELERS SURETY & CASUALTY
CO. OF AMERICA,
FEDERAL INSURANCE CO.,
THE CONTINENTAL INSURANCE CO.,
FIDELITY & DEPOSIT CO. OF MD,
ZURICH NORTH AMERICAN INSURANCE CO.,
LIBERTY MUTUAL INSURANCE CO. and
ZURICH AMERICAN INSURANCE CO.,

    Intervenor-Defendants.

**MEMORANDUM OPINION AND ORDER
ADOPTING AND AFFIRMING AS FRAMED
MAGISTRATE JUDGE'S DISCOVERY ORDER,
OVERRULING IN PART AND DEFERRING IN PART
INTERVENOR-PLAINTIFF'S OBJECTIONS AND
DIRECTING PLAINTIFF TO SUPPLEMENT OBJECTIONS**

I. Procedural History

This is a Miller Act, 40 U.S.C. §§ 3131-3133, case in which the plaintiff, Turner Construction Co. ("Turner"), seeks payment from the intervenor-plaintiff's surety, and the intervenor-plaintiff, Designer's Specialty Cabinet Co. doing business as Designer's Specialty Millwork ("DSM"), seeks payment from Turner's sureties. The parties have had several discovery disputes throughout these proceedings. This Court referred all non-dispositive matters, except motions in limine, to United States Magistrate Judge Michael John Aloi.

DSM previously filed a motion to compel discovery responses from Turner. ECF No. 114. Of relevance here, DSM sought to compel responses to its Document Request No. 13, requesting that Turner produce what DSM identifies as "'Exhibit B' in Excel format with referenced 'source' documents," which are referenced in Exhibit B. Exhibit B is an Excel spreadsheet that includes information regarding purchase change orders, modification numbers, descriptions, and pending time extension claims for various subcontractors. It is part of a larger Excel document that includes several spreadsheets containing information about the Federal Bureau of Investigation ("FBI") project (collectively "the spreadsheets"). Turner claims it created the spreadsheets as an aid in negotiating final payments with the FBI. Turner continually updated and changed the spreadsheets during the project and its

negotiations with the FBI. A prior version of Exhibit B was disclosed to DSM in PDF format. DSM seeks a copy of Exhibit B in native, Excel, format so that it can see what changes were made over time to determine whether Turner shifted expenses between subcontractors and treated DSM unfairly.

Magistrate Judge Aloi ordered Tuner to produce Exhibit B and the source documents for in camera review, he also later ordered Turner to produce a privilege log regarding those documents. Turner also provided to the magistrate judge several emails it claims show that Exhibit B is covered by attorney-client privilege or the attorney-work-product doctrine. After reviewing those documents, Magistrate Judge Aloi concluded that the spreadsheets, Exhibit B, the source documents, and the emails were relevant. He concluded that the spreadsheets, source documents, and most of the emails were not protected by attorney-client privilege or the work-product doctrine, but that some of the emails were privileged. He ordered that all of the documents, except for certain emails he found to be privileged, be disclosed to DSM. Turner then filed timely objections to the magistrate judge's order. DSM filed a response in opposition to those objections, and Turner then filed a reply.

## II. Applicable Law

Under Federal Rule of Civil Procedure 72(a), a district court may refer to a magistrate judge "a pretrial matter not dispositive

of a party's claim or defense." Fed. R. Civ. P. 72(a). The parties may file objections to the magistrate judge's order, and the "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Id.

III. Discussion

First, Turner argues that the magistrate judge erred in finding that Exhibit B is relevant. Federal Rule of Civil Procedure 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In considering proportionality, courts must consider: (1) "the importance of the issues at stake in the action"; (2) "the amount in controversy"; (3) "the parties' relative access to relevant information"; (4) "the parties' resources"; (5) "the importance of the discovery in resolving the issues"; and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

DSM's claims include allegations that Turner treated DSM's delay claims differently than those made by other subcontractors working on the interior of the FBI project. The spreadsheets, including Exhibit B, are a statement of the status of claims filed

4

by other interior subcontractors, and are therefore relevant to DSM's claims. Thus, this Court finds no clear error in the magistrate judge's conclusions on this issue.

Second, Turner argues that the spreadsheets, including Exhibit B, are privileged. Attorney-client privilege "protects communications between a client and an attorney during consultations." State ex rel. Med. Assurance of W. Va., Inc. v. Recht, 583 S.E.2d 80, 88 (W. Va. 2003) (internal quotation marks omitted).[1] "[T]he privilege protects the substance of communications," whether verbal or in writing. Id. (internal quotation marks omitted). A communication is privileged where: (1) "both parties . . . contemplate[d] that the attorney-client relationship does or will exist"; (2) "the advice [was] sought by the client from the attorney in his capacity as a legal advisor"; and (3) "the communication between the attorney and client . . . [was] intended to be confidential." Id. at 89. However, the West Virginia Supreme Court of Appeals has emphasized that

> [t]he attorney-client privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question "What did you say or write to the attorney?" and may not refuse to disclose any relevant fact within knowledge merely

---

[1] Because West Virginia's substantive contract law applies to DSM's claims in this civil action, West Virginia law governs privilege claims. Fed. R. Evid. 501.

>   because s/he incorporated a statement of such fact into her communication to her attorney.

Recht, 583 S.E.2d at 93 (quoting 1 Franklin D. Cleckley, Handbook on Evidence for West Virginia Lawyers § 5-4(E)(1), 5-105 (4th ed. 2000)).

Turner argues that the spreadsheets are privileged because they were created in collaboration with counsel. Magistrate Judge Aloi reviewed in camera communications between Turner and its counsel regarding the spreadsheets' contents and concluded that the spreadsheets are not privileged. Additionally, this Court finds that while Turner's communications with its counsel regarding the spreadsheets may be covered by attorney-client privilege, as the factual content of those communications, the spreadsheets are not privileged. The attorney-client privilege protects only communications between a client and counsel, but "it does not protect disclosure of the underlying facts by those who communicated with the attorney." Id. Thus, this Court finds no clear error in the magistrate judge's conclusion as to this issue.

Third, Turner argues that the magistrate judge erred in concluding that the spreadsheets, including Exhibit B, are not protected under the attorney-work-product doctrine. The work-product doctrine provides qualified immunity from disclosure of "written materials obtained or prepared by an adversary's counsel with an eye toward litigation." State ex rel. Erie Ins. Prop. & Cas. Co. v. Mazzone, 648 S.E.2d 31, 38 (W. Va. 2007) (internal

quotation marks omitted). The doctrine's protection extends to "materials prepared by non-lawyers when the paramount purpose for generating the materials is litigation." Id.

Based on his in camera review, Magistrate Judge Aloi concluded that the spreadsheets are an accounting of subcontractors' delay and other impact claims, setting out the amount and status of those claims. He concluded that Turner created the spreadsheets in its normal course of business in performing the prime contract and managing its subcontractors. Thus, the magistrate judge concluded that Turner's use of the spreadsheets in negotiating, and subsequently litigating, payment disputes with the FBI did not convert the information into attorney work product. He further concluded that none of the attorney-client communications regarding the spreadsheets and reviewed in camera indicate that the spreadsheets were originally created at the direction of counsel for use in litigation or that the spreadsheets contain the mental impressions, opinions, or advice of counsel. This Court finds no basis for second guessing the magistrate judge's findings in that regard.

Turner argues that the spreadsheets are work product because, after they were created, they were modified at the direction of counsel for use in negotiations with the FBI and any subsequent litigation with the FBI. However, Turner fails to show that the "paramount purpose in generating [the spreadsheets was]

7

litigation," id., rather than an accounting of subcontractor claims used in the ordinary course of business that was later adapted for use as a tool in negotiations with the FBI. Turner does not dispute that the spreadsheets were created before the project was completed and without attorney input. Rather, Turner argues that the spreadsheets were reviewed by its counsel later, and that its counsel commented on the contents of the spreadsheets. However, this does not convert documents created by Turner for its own use, before litigation was contemplated, into attorney work product once litigation was contemplated. Accordingly, this Court finds no clear error in the magistrate judge's conclusion as to this issue.

Fourth, Turner argues that the magistrate judge erred in ordering the disclosure of documents that were not responsive to DSM's document request. Specifically, Turner argues that the magistrate judge ordered the disclosure of the entire Excel document containing Exhibit B and other spreadsheets not requested by DSM, along with emails and their attachments submitted by Turner for in camera review.

As to the other spreadsheets in the Excel file containing Exhibit B, DSM requested Exhibit B in native format. Turner admits that the only way it can do so is by giving DSM the entire Excel document, including all of the spreadsheets. The spreadsheets are not privileged or protected by the work-product doctrine and are covered by the protective orders entered in this case. Thus, to

comply with the magistrate judge's discovery order and fully respond to DSM's discovery request, the entire Excel document must be disclosed to DSM, and such disclosure will not overburden or prejudice Turner. In that regard, this Court finds no clear error in the magistrate judge's order.

As to the emails and documents attached thereto, Turner argues that they are beyond the scope of DSM's discovery request or are otherwise privileged or work-product. However, this Court lacks sufficient information to review the magistrate judge's order as to these claims. It is unclear which documents Turner is referring to, and without specific references and argument, this Court is unable to evaluate Turner's claims. Thus, this Court believes it would be beneficial for Turner to supplement its objections as to those documents and for DSM to have an opportunity to respond. Accordingly, it is ORDERED that Turner supplement its objections as to these documents and that the parties file supplemental briefs on this issue as ordered in detail below.

## IV. Conclusion

For the foregoing reasons, the magistrate judge's discovery order (ECF Nos. 261, 262) is ADOPTED and AFFIRMED AS FRAMED. Turner's objections (ECF No. 270) are OVERRULED IN PART and DEFERRED IN PART. Further, it is ORDERED that Turner supplement its objections as to those documents **on or before February 21, 2017**. DSM may file any response **on or before March 7, 2017**, or

within fourteen days of being served with Turner's supplemental objections if filed before February 21, 2017. At this time, this Court does not believe a reply is necessary.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    February 14, 2017

/s/ Frederick P. Stamp, Jr.  
FREDERICK P. STAMP, JR.  
UNITED STATES DISTRICT JUDGE